UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EDWARD M. HOFFMAN,

       Petitioner,

                             Case No. 1:09-cv-288
v.                             Hon. Robert J. Jonker

CINDI S. CURTIN,

       Respondent.

_____/


**REPORT AND RECOMMENDATION**

       Petitioner, Edward M. Hoffman, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

    **I.**      **Background**

       Following a jury trial in 45th Circuit Court (St. Joseph County), petitioner was convicted of first-degree murder, M.C.L. § 750.316, and sentenced to mandatory life imprisonment with no parole. *See* Judgment of Sentence (May 7, 2004) (docket no. 20).[1] The Michigan Court of Appeals summarized the events which led up to petitioner's conviction:

> Defendant was convicted for the October, 2003, murder of Chris Shafer. Shafer was found at the Klinger Lake access site, lying on the ground, his head covered in blood, with blood running out of his mouth. His skull was open with brain matter protruding, and skull fragments were on the ground. The victim was air-lifted to a nearby hospital, but died from his injuries several days later. Defendant admitted hitting the victim with a jack handle, but claimed that he had acted in self-defense after the victim attacked him.

*People v. Hoffman*, No. 255959, slip op. at 1 (Feb. 28, 2006) (docket no. 20).

_____

      [1] Respondent erroneously stated that petitioner was convicted in Wayne County, Michigan. *See* Answer at p. 2 (docket no. 9).

On June 8, 2004, the trial court appointed Attorney Fred Bell to represent petitioner on appeal.  Claim of Appeal and Order Appointing Counsel (docket no. 19).  On October 27, 2004, the case was remanded to the trial court for appointment of substitute counsel because Mr. Bell had failed to ensure the timely filing of the transcript.  *People v. Hoffman*, No. 255959 (Order) (docket no. 19).

Petitioner, through his newly appointed counsel, Attorney P. E. Bennett, presented three issues on appeal:

I.     Where defense counsel said he could no longer adequately represent [petitioner] and [petitioner] agreed, did the Circuit Judge violate [petitioner's] constitutional right to the effective assistance of counsel and abuse his discretion in denying counsel's motion to withdraw?

II.    Where the photographs of the deceased's head during his hospital treatment were gruesome and lacked probative value and their prejudicial impact substantially outweighed any probative value, did the Circuit Judge abuse his discretion and commit reversible error in admitting the two photos over defense objection?

III.   Where the evidence showed that the fatal beating occurred during a drunken fight, was there insufficient evidence of premeditated and deliberated murder?

Brief on Appeal (docket no. 20).  The Michigan Court of Appeals affirmed petitioner's conviction. *See People v. Hoffman,* No. 255959.

Petitioner filed a pro se application for leave to appeal to the Michigan Supreme Court, raising these three issues.  *See* Application for leave to appeal (docket no. 20).  Plaintiff also submitted a handwritten "supplement" to his application for leave to appeal, in which he asked the court to consider an additional argument as part of Issue III asking the court to consider a bill

introduced in the Michigan legislature regarding self defense (House Bill No. 5143).[2] *Id.* The

Michigan Supreme Court denied petitioner's application for leave to appeal.[3]

        After his unsuccessful appeal, petitioner filed a motion for relief from judgment in

the trial court pursuant to MCR 6.500 *et seq.*, raising seven issues which he designated as "A"

through "G":

    A.     [Petitioner's] conviction should be dismissed in light of Michigan's
               new self defense law.

---

   [2] Petitioner is apparently referring to the "self-defense act" or "SDA", M.C.L. § 780.971 *et seq.*
(effective October 1, 2006). Section 2 of the SDA provides as follows:

   (1) An individual who has not or is not engaged in the commission of a crime at the time he
   or she uses deadly force may use deadly force against another individual anywhere he or she
   has the legal right to be with no duty to retreat if either of the following applies:

      (a) The individual honestly and reasonably believes that the use of deadly
      force is necessary to prevent the imminent death of or imminent great
      bodily harm to himself or herself or to another individual.

      (b) The individual honestly and reasonably believes that the use of deadly
      force is necessary to prevent the imminent sexual assault of himself or
      herself or of another individual.

   (2) An individual who has not or is not engaged in the commission of a crime at the time he
   or she uses force other than deadly force may use force other than deadly force against
   another individual anywhere he or she has the legal right to be with no duty to retreat if he
   or she honestly and reasonably believes that the use of that force is necessary to defend
   himself or herself or another individual from the imminent unlawful use of force by another
   individual.

M.C.L. § 780.972. The SDA further provides that "Except as provided in section 2, this act does not modify
the common law of this state in existence on October 1, 2006 regarding the duty to retreat before using deadly
force or force other than deadly force." M.C.L. § 780.972 (footnote omitted). The court notes that petitioner
did not raise the SDA issue in his habeas petition. Even if he had, the claim would fail because the SDA,
which took effect on October 1, 2006, does not apply retroactively to this crime which was committed in
2003. *See People v. Conyer*, 281 Mich.App. 526, 531, 762 N.W.2d 198 (2008).

   [3] The transcript of the Michigan Supreme Court proceedings submitted by respondent did not include
that court's order denying leave to appeal. *See People v. Hoffman*, No. 130926 (docket no. 20). However,
a copy of the order was attached to Hoffman's original petition and appears in the official reporter. *See* Order
(August 29, 2006) (docket no. 1-2); *People v. Hoffman*, 476 Mich. 865, 720 N.W.2d 323 (2006).

B.      [Petitioner] was denied his right to counsel of choice and appellate counsel was ineffective for failing to cite authority regarding this issue.

C.      Defense counsel operated under a conflict of interest and was ineffective for failing to investigate and suppress statements taken in violation of *Miranda*.

D.      The prosecution['s] prejudicial comments and incorrectly citing elements to the jury rose to the level of a due process violation and shifted the burden of doubt.

E.      The appellate court abused its discretion and violated [petitioner's] due process rights by affirming his conviction on false findings of fact.

F.      The prosecution/police violated [petitioner's] due process rights by failing to preserve exculpatory crime scene evidence.

G.      [Petitioner] was denied his right to counsel at a critical stage during an ex parte communication between the judge and prosecutor discussing the admittance of evidence which had already been a point of contention.

Motion for relief from judgment (docket no. 22).

The trial court denied petitioner's motion, reasoning in pertinent part as follows:

IT IS HEREBY ORDERED that the Defendant's motion is denied. Under MCR 6.508(D), a motion for relief from judgment may not be granted if the defendant alleges grounds for relief which were decided previously, unless he/she establishes that a retroactive change in the law undermines the prior decision. Also, the motion shall be denied if the defendant alleges grounds for relief which could have been raised on appeal or in a prior motion, unless the defendant demonstrates good cause for failure to raise such grounds previously and, also, actual prejudice from the alleged irregularities that support the claim for relief.

Defendant's claim of self-defense was raised at trial, and MCL 780.974, which the defendant uses for support, is not retroactive and, thus, does not entitle defendant to relief.

Defendant's claim of Sixth Amendment Right to Counsel was decided against the defendant by the Michigan Court of Appeals, and the defendant fails to demonstrate a retroactive change in the law which would undermine the decision.

4

Defendant's claim of Ineffective Appellate Counsel was decided by the Michigan Supreme Court, and the defendant fails to demonstrate a retroactive change in law which would undermine the decision.

The defendant's claims relating to Ineffective Defense Counsel, abuse of discretion at the Appellate level, Due Process violations and the right to counsel during ex parte communications between the Judge and the Prosecutor have not been raised previously.  Defendant fails to demonstrate good cause for failure to raise these on a prior motion or appeal.  The court does not find a significant possibility that the defendant is innocent of the crime and, therefore, will not waive the good cause requirement under MCR 6.508(D).

Order denying defendant's motion for relief from judgment (July 9, 2007) (docket no. 22).

Petitioner appealed this order in a delayed application for leave to appeal to the

Michigan Court of Appeals, raising six issues:

I.    The lower courts violated [petitioner's] right to due process by failing to recognize that the enactment of the new self-defense laws while [petitioner's] conviction was not yet final makes them automatically retroactive.

II.   The lower courts violated [petitioner's] right to due process by failing to apply the structural error standard as decided by the Supreme Court while [petitioner's] case was still on direct review to the issue of forced choice of counsel.

III.  The lower courts violated [petitioner's] right to due process by failing to recognize ineffective appellate counsel as good cause for the underlying issue of ineffective trial counsel on several grounds.

IV.   The appellate court violated [petitioner's] right to due process by affirming [petitioner's] conviction on false findings of fact that were never presented or inferred at trial.

V.    The lower courts violated [petitioner's] right to due process by failing to recognize ineffective appellate counsel as good cause for the underlying issue of bad faith evidence tampering by officials.

VI.   The lower courts violated [petitioner's] right to due process by failing to recognize ineffective appellate counsel as good cause and that there is no retroactive aspect to the underlying issue of denial of

5

counsel at a critical stage during an ex parte communication between a Judge and a prosecutor.

Delayed application for leave to appeal (docket no. 21). The Michigan Court of Appeals denied the application for leave to appeal because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Hoffman*, No. 280065 (Mich. App.) (Order March 24, 2008) (docket no. 22).

Petitioner appealed this order in an application for leave to appeal to the Michigan Supreme Court, raising six similar issues (in his words):

I.      Did the lower court violate [petitioner's] constitutional right to due process of law by failing to grant relief on the underlying issue of should the court reverse and remand [petitioner's] conviction so that Michigan's new self-defense laws may be retro-actively applied? And do the circumstances of the instant offense trigger the presumption regarding use of deadly force?

II.     Did the lower court violate [petitioner's] constitutional right to due process of law by failing to apply the structural error standard retroactively to the underlying issue of was [petitioner] denied his 6th Amendment right to counsel of choice? And was appellate counsel ineffective for failing to cite authority and incorrectly addressing the issue?

III.    Did the lower court violate [petitioner's] constitutional right to due process of law by failing to recognize ineffective appellate counsel as good cause for the underlying issue of was [petitioner's] 6th Amendment constitutional right to effective counsel violated by defense counsel's actions/inactions on various grounds and as a cumulative effect? And was appellate counsel ineffective for failing to raise this issue?

IV.     Did the appellate court abuse its discretion and violate [petitioner's] constitutional right to due process of law by affirming [petitioner's] conviction on false findings of fact?

V.      Did the lower court violate [petitioner's] constitutional right to due process of law by refusing to recognize ineffective appellate counsel as good cause for the underlying issue of did the state/police violate

6

[petitioner's] due process rights by failing to preserve crime scene evidence?

VI.     Did the lower court violate [petitioner's] constitutional right to due process of law by failing to recognize ineffective appellate counsel as good cause and that there is no retroactive aspect to the underlying issue of was [petitioner] denied his 6th Amendment constitutional right to counsel during an ex parte communication between the judge and prosecutor which occurred while defense counsel was absent from the courtroom?

Application for leave to appeal to the Michigan Supreme Court (docket no. 22). The Michigan Supreme Court denied the application, because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Hoffman*, No. 136342 (Mich.) (Order Oct. 27, 2008) (docket no. 22).

Hoffman has sought habeas corpus relief in this court pursuant to § 2254. His amended petition (docket no. 5) raised seven issues (in his words):

I.      In violation of the V, VI, XIV Amendments petitioner was denied counsel of choice and appellate counsel was ineffective for failing to cite authority.

        Trial counsel motioned to withdraw on the first day of trial without prior notice to anyone. The Judge gave petitioner no choice but to continue with unwanted counsel. Appellate counsel addressed this as an "ineffective" claim instead of a "force choice of counsel" claim and "failed to cite authority," as stated in the Michigan Court of Appeals' decision.

II.     In violation of the V, XIV Amendments petitioner was convicted on insufficient evidence by impermissibly stacking inferences and using false findings of fact. Petitioner's conviction was obtained in violation of the Sixth Amendment to the United States Constitution where trial counsel rendered ineffective assistance of counsel violating both US. Const VI, XIV due process.

        Petitioner attempted to avoid a confrontation with the victim. The victim was the aggressor and the prosecution agreed that petitioner met his duty of retreat. 5 of the 7 main facts relied on by the

7

Michigan Court of Appeals to affirm the conviction coincide with no ones' testimony.

III.     In violation of V, VI, XIV Amendments appellate counsel's failure to raise obvious constitutional issues was ineffective assistance and a show of good cause for potentially defaulted claims.

Appellate counsel was ineffective for failing to raise the following 4 obvious and significant constitutional issues and thus became a showing of good cause for the potentially defaulted claims.

IV.     In violation of the V, VI, XIV Amendments trial counsel was ineffective for failure to investigate, suppress and object to burden shifting *Miranda* silence comments, apply the Doctrine of completeness, and operated under a conflict of interest.

Counsel was retained by the prosecution witness' grandmother and never pointed out the several forms of immunity or evidence that might inculpt said witness.

Counsel failed to obtain and/or interview petitioner's medical records and/or doctor to define the seriousness of his pre-existing injuries and their effect on his ability to defend himself.

Counsel allowed prejudicial redactions of recorded a phone call even after being reminded of the Doctrine of Completeness by the Judge.

V.     In violation of V, XIV Amendments the prosecution failed to disclose favorable evidence, made improper prejudicial and burden shifting comments and continually used the wrong test for provocation and self-defense to the jury.

The prosecution knew of petitioner's prior existing medical condition due to a hospital visit during a previous incarceration and failed to disclose this information and made belittling comments to the jury regarding petitioner's injuries.  The prosecution made many burden shifting comments regarding petitioner's *Miranda* silence which then set up his foundation for calling petitioner a "liar"  and references to "Peter denying Jesus" during the Easter season.  The prosecution made continuous statements to the jury, even over an objection, that the test for provocation and self-defense is "injury vs. injury" instead of "threat perceived."

8

VI.    In violation of the V, XIV Amendments the state failed to preserve exculpatory crime scene evidence.

The state failed to preserve the prosecution witness' clothing and effects that had the same blood splatter patterns on them and more quantity of blood that petitioner's clothing.  The state failed to collect, catalog, or record the mass quantity of tools at the scene, which would have negated the prosecutions's "Lone Jack Handle" theory.  The state failed to preserve or produce the knife found in petitioner's pocket, thereby showing he used the least lethal means at hand to defend himself.

VII.   In violation of the V, VI, XIV Amendments petitioner was denied counsel at a critical stage.

While counsel was absent from the courtroom the prosecutor discussed the admittance of evidence with the Judge, that had previously been a high point of contention.  As this evidence involved the Doctrine of Completeness and the Judge asked counsel a question while he was absent, this was a time when rights were exercised or waived and the guiding hand of counsel was necessary, thereby being a "critical stage."

Amended Petition (docket no. 5 at pp. 6-16).  In reviewing the amended petition, the court will consider relevant arguments contained in petitioner's original 81-page petition (which is essentially a legal memorandum in support of his habeas claims).  *See* Original Petition (docket no. 1).

## II.    Procedural default and ineffective assistance of appellate counsel

### A.    Procedurally defaulted claims

Respondent contends that petitioner's Issues I, IV, V, VI and VII are procedurally defaulted.  In resolving these issues, the court will need to address Issue III, petitioner's claim that the procedural default should be excused due to the ineffective assistance of his appellate counsel. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  Not every state procedural rule will warrant application of the procedural default doctrine.  Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.  "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Petitioner exhausted these claims by filing a motion for relief from judgment pursuant MCR 6.500 *et. seq*.  Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal these claims because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D), which provides in pertinent part as follows:

> **Entitlement to Relief.**  The defendant has the burden of establishing entitlement to the relief requested.  The court may not grant relief to the defendant if the motion
>
> (1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;
>
> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

10

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief.  . . .

The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

MCR 6.508(D).

The Sixth Circuit has previously held that MCR 6.508(D) is a valid procedural bar for habeas purposes.  *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000).  However, in *Guilmette v. Howes*, 624 F.3d 286, 288 (6th Cir. 2010) (*en banc*), the Sixth Circuit held that brief orders which cite only MCR 6.508(D) - i.e., the type of orders entered by the Michigan Court of Appeals and the Michigan Supreme Court in this case - "are not explained orders invoking a procedural bar."  In reaching this determination, the court observed that "Michigan practice confirms that brief orders citing Rule 6.508(D) in some cases refer to a petitioner's failure to meet his burden on the merits."  *Guilmette*, 624 F.3d at 291. "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained."  *Id.*  Thus, courts "must look past such orders 'to the last reasoned state court opinion to determine the basis for the state court's rejection' of a petitioner's claim."  *Skinner v. McLemore*, 425 Fed.Appx. 491, 495 (6th Cir. 2011), quoting *Guilmette*, 624 F.3d at 291.

Here, the last reasoned state opinion was the trial court's order denying the motion for relief from judgment entered on July 9, 2007. In that order, the trial court addressed claims which are raised as Issues I, III, IV, V, VI and VII in this habeas action.

### 1.      Issue I

The trial judge found that the Court of Appeals addressed petitioner's "right to counsel" claim in the original appeal and that petitioner failed to demonstrate a retroactive change in the law which would undermine the appellate decision. The trial court's ruling would constitute a procedural default under MCR 6.508(D)(2). However, it appears that petitioner raised a different issue in his motion for relief from judgment, i.e., that he was denied his "counsel of choice" and that his appellate counsel incorrectly raised the issue as one of a denial of the right to counsel, not as the denial of his "counsel of choice." This claim, which appears in the habeas petition as Issue I, is not subject to procedural default. Accordingly, the court will address this claim on the merits.

### 2.      Issue III

The trial judge found that petitioner's claim of ineffective assistance of appellate counsel was decided by the Michigan Supreme Court, and that petitioner failed to demonstrate a retroactive change in the law which would undermine the decision. While the trial court's decision was based on a procedural bar under MCR 6.508(D)(2), this court has previously determined that claims of ineffective assistance of appellate counsel brought on a motion for relief from judgment under are not subject to procedural default. Because state collateral review under MCR 6.500 *et seq.* is the first opportunity for a criminal defendant to address and exhaust the issue of ineffective assistance of appellate counsel, this issue is not subject to the procedural default doctrine. *See Whiting v. Burt*, 395 F.3d 602, 614 (6th Cir. 2005); *Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th

12

Cir. 2004); *Tucker v. Renico*, 317  F.Supp.2d  766, 773 (E.D. Mich. 2004).  Petitioner's claim for ineffective assistance of appellate counsel, which appears in the habeas petition as Issue III, is not subject to procedural default.  Accordingly, the court will address this claim on the merits  as a free-standing claim.  *See* discussion in  §§ II.B and IV.C, *infra*.

### 3.        Issues IV, V, VI and VII

The trial court held that petitioner's claims of ineffective defense counsel, abuse of discretion by the Michigan Court of Appeals, the various Due Process violations and the right to counsel during ex parte communications between the Judge and the Prosecutor were not raised previously and that the petitioner failed to demonstrate good cause for failure to raise these on a prior motion or appeal or shown a significant possibility that he was innocent of the crime.  The court's ruling was based upon the procedural bar of MCR 6.508(D)(3).  Accordingly, these claims, which appear in the habeas petition as Issues IV, V, VI and VII, are procedurally defaulted.

### B.        Cause and Prejudice as to Issues IV, V, VI and VII

Habeas review of a procedurally defaulted claim is precluded  unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.  "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Here, petitioner has asserted ineffective assistance of appellate counsel as both cause to excuse the procedural defaults of Issues IV, V, VI and VII and as an independent claim for habeas relief in Issue III.

Petitioner's second appointed appellate counsel raised and fully briefed three issues, two of which are before this court on the merits.  Petitioner asserts that his appellate counsel was deficient for failing to raise 14 additional issues and sub-issues.[4]  Ineffective assistance of counsel may constitute cause for excusing a procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment.  *Murray*, 477 U.S. at 488; *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687.  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690.  "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993).

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.  *Strickland*, 466 U.S. at 689-690.  Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003).

---

[4] The court notes that respondent's answer fails to address the individual claims of ineffective assistance of appellate counsel.

It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983).

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52.   It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981).

When evaluating the issue of ineffective assistance of appellate counsel, prejudice is shown if there is a reasonable probability that, but for his counsel's failings, the defendant would have prevailed on his appeal. *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009), citing *Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir.2004).   A "reasonable probability" is a probability sufficient to undermine the court's confidence in the outcome. *Id.* at 564-65.   To evaluate a claim of ineffective assistance of appellate counsel, the court assesses the strength of the claim appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004).   Thus, appellate counsel cannot be found to be ineffective for failing to raise an issue that lacks merit. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

## 1.    Issue IV (Ineffective assistance of trial counsel)

In Issue IV, petitioner set forth five instances of ineffective assistance of trial counsel which allegedly violated his rights under the Fifth, Sixth and Fourteenth Amendments.

### a.    Potential conflict with retained counsel

Petitioner contends that his counsel had a potential conflict of interest, because a third party (prosecution witness Ms. Nunnery's grandmother) paid counsel's legal fee.   The trial court discussed this potential conflict in addressing counsel's motion to withdraw.   Because this matter

will be addressed on the merits, *see* discussion in § IV.A., it is unnecessary for the court to review it for purposes of establishing a procedural default.

        **b.**      **Motion for discovery**

        Petitioner, while represented by counsel, filed a *pro se* motion seeking discovery. *See* Defense Motion for Discovery (docket no. 1-4 at pp. 8-9). This motion, which was filed on March 30, 2004 (one week before the jury voir dire), consisted of 16 separate requests, including "whether any witness has recieved [sic] any promise, immunity, or inducement for his/her testimony in this cause." *See id.*; Original Petition at p. 37. In support of this claim, petitioner contends that the prosecutor failed to disclose "several obvious forms of immunity given to Ms. Nunnery for her testimony." Original Petition at p. 49. Petitioner apparently contends that this information could establish the basis for a claim under the rules announced in *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady* and its progeny, a criminal defendant's due process rights are violated when the prosecution suppresses exculpatory evidence. *Williams v. Coyle*, 260 F.3d 684, 706-07 (6th Cir. 2001). "Exculpatory evidence includes evidence regarding the reliability of a witness." *Id.* at 707, citing *Kyles v. Whitley*, 514 U.S. 419, 433 (1995); *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Carter v. Bell*, 218 F.3d 581, 602 (6th Cir. 2001). The failure to disclose exculpatory evidence is material where the evidence creates a "reasonable probability of a different result," *Id.* citing *Bagley*, 473 U.S. at 678, which exists when "the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " *Id.* quoting *Kyles*, 514 U.S. at 434 (quoting *Bagley*, *supra*). Under *Brady*, such exculpatory evidence includes the contents of plea agreements with key government witnesses, which the prosecution must reveal. *California v. Trombetta*, 467 U.S. 479, 485 (1984).

        While petitioner faults his trial counsel for failing to file this extensive discovery request, he has not demonstrated that such discovery would have disclosed any exculpatory evidence. Ms. Nunnery testified that she received no promises for her testimony. Trial Trans. II

at p. 208.[5]   Despite Ms. Nunnery's testimony that she did not receive any promises for her testimony, petitioner speculates that she received immunity because unidentified police reports refer to residue of methamphetamines in her vehicle, that her vehicle was not "legal," she had more blood on her person than petitioner, and that she was serving a sentence in Goshen County, Indiana while petitioner was awaiting trial.   Original Petition at pp. 49-50.   Petitioner admits that he has no evidence of such immunity, but that he is using information obtained from unidentified police reports that are not part of the court record.   *Id.* at p. 49.   Petitioner's speculation regarding Ms. Nunnery's criminal record or possible dealings with government officials does not establish a constitutional violation.   In the absence of exculpatory evidence, petitioner was not prejudiced by his counsel's failure to perform this discovery.

### c.   Petitioner's medical records

Petitioner contends that his counsel was ineffective for failing to interview his doctor or subpoena him as an expert witness regarding his ongoing shoulder problems.   Original Petition at p. 41.   Petitioner believed that his doctor would have supported his self-defense claim by stating "that there was great [potential] for further tendon, muscle, and nerve damage" if he had been further assaulted and manhandled "by the larger and stronger victim."   *Id.*

It was uncontested that petitioner had major problems with his shoulder which limited his ability to fight with the victim.   Petitioner testified: that at the time of the altercation he had a "bad shoulder" which "kicks out" [i.e., becomes dislocated] if he is not careful; that he has had this injury since "the eighties" when he wrecked a motorcycle; that about half of the time he has to go to the hospital to have the shoulder put back in place; that his doctor wanted to perform corrective surgery; that he is not going to have the surgery done; that he could not throw punches once his shoulder was out; and that he could not put his shoulder back into place at the time of his altercation

---

[5] The court will refer to the trial transcripts as follows: Trial Trans. I (April 6, 2004) (docket no. 13); Trial Trans. II (April 12, 2004) (docket no. 14); Trial Trans. III (April 13, 2004) (docket no. 15); Trial Trans. IV (April 14, 2004) (docket no. 16); and Verdict Trans. (April 15, 2004) (docket no. 17).

with the victim.  Trial Trans. III at pp. 202, 241-43.  In addition, Ms. Nunnery, a government witness, testified that petitioner's arm has been "ripped out of the socket" on multiple occasions, that he cannot "put it back in by himself," and that petitioner's shoulder "went out" while he was fighting the victim.  Trial Trans. II at pp. 189-91, 227.  After the fight, while Nunnery and petitioner were at a motel, another individual, Ray Skeels, put petitioner's shoulder back into the socket.  *Id.* at p. 206-07.

The jury was presented with the issue of petitioner's pre-existing shoulder injury and his limitations.  The uncontested testimony established that petitioner had a serious problem with his shoulder, that he required surgery, that he had limited his use of the shoulder, that his shoulder was torn or ripped out of the socket during the fight, and that another person had to repair his shoulder after the fight.  Under these circumstances, petitioner was not prejudiced by his counsel's failure to call an expert witness to further discuss the extent of plaintiff's pre-existing shoulder problem.

### d.    Petitioner's *Miranda* claim

Petitioner contends that the police interrogation violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) and that his trial counsel failed to suppress it.  Original Petition at pp. 42-43.  Petitioner is referring to a tape recording of the interrogation played for the jury at trial.  *See* Trial Trans. IV at pp. 21-24; Original Petition at p. 43.  While petitioner refers to a transcript of the interrogation, none has been provided to this court.   The substance of petitioner's interrogation is found in the trial testimony of Michigan State Police Trooper Matthew Berry, who testified as follows.

Trooper Berry gave petitioner his *Miranda* rights prior to his questioning, which involved three sessions.  Trial Trans. III at pp. 11-12.  During the first session, petitioner denied being at the scene and provided a timeline indicating that he was in northern Indiana and White Pigeon at the time of the assault.  *Id.* at pp. 12-13.  Petitioner stated that he had not seen the victim for quite some time and assumed the victim was in jail.  *Id.* at p. 13.  The first session ended when

18

petitioner was "done talking," leaving Trooper Berry with the impression that petitioner wanted to exercise his right remain silent. *Id.* at p. 12. At this time, petitioner did not assert his right to an attorney. *Id.* Approximately 30 to 45 minutes later, petitioner asked to speak with Trooper Berry. *Id.* at p. 15. During the second session, petitioner wanted to get out his side of the story. *Id.* at p. 16. Petitioner stated that the victim attacked him, that he retaliated, that petitioner "did what he had to do," and that his action was in self-defense. *Id.* Specifically, petitioner stated: that he and the victim were talking and drinking; that the victim suddenly became belligerent and initiated the attack by punching him in the mouth; that petitioner left the weapon (i.e., the jack handle) in the trunk of his car with the lid open because "he knew he couldn't trust" the victim; that petitioner "beat the shit out of [the victim];" and then left the scene. *Id.* at pp. 16-19. After the second session ended, Trooper Berry questioned petitioner a third time for "some clarification questions." *Id.* at p. 12. At that time, petitioner estimated that he hit the victim four or five times. *Id.* at p. 23.

Petitioner contends that his counsel should have moved to exclude the statements made to Trooper Berry. A court will exclude statements made by a suspect unless the suspect knowingly, voluntarily and intelligently waived his *Miranda* rights. *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990); *Mahacek v. Hofbauer*, 213 F.3d 947, 954 (6th Cir. 2000). Nothing in the limited record before the court suggests that the interrogation violated petitioner's *Miranda* rights. Petitioner's counsel, Mr. Colbeck, performed an extensive cross-examination of Trooper Berry regarding the interrogation. Trial Trans. III at pp. 24-39, 41-42. On his own cross-examination, petitioner admitted that he was read his *Miranda* rights. *Id.* at p. 250. While petitioner testified that he was "still drunk" the morning of his interrogation and could not recall what he told Trooper Berry, he contradicted himself by testifying about the statements he made to Berry. *Id.* at pp. 249-52; Trial Trans. IV at pp. 8-16. Then, petitioner introduced the interrogation videotape as evidence, believing that it would assist in his theory of self-defense:

> [Mr. Colbeck].        Now, if you were to view a videotape of the interview you made with
>                       the -- at the Michigan State Police post, would that help you in

>           answering a lot of the questions that have been posed by both the
>           prosecutor and myself, do you think?
>
> [Petitioner].        Yes, sir.

Trial Trans. IV at p. 21.

Petitioner has not articulated any *Miranda* violation that his counsel could have used to suppress petitioner's statement. On the contrary, petitioner relied on the statement to support his self-defense claim. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court"). Accordingly, there is no basis for petitioner's claim that his counsel was ineffective for failing to suppress his statements.

### e.    Doctrine of completeness

Petitioner contends that his trial counsel was ineffective for failing to admit "complete" transcripts of recorded telephone calls between petitioner and his mother pursuant to the "doctrine of completeness." The "doctrine of completeness" is codified in the Michigan Rules of Evidence (MRE) 106 which states:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require that party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

MRE 106. Petitioner's contention is without merit.

As an initial matter, there is no transcript of this evidence in this court's record. As with the *Miranda* claim, the court will review petitioner's "doctrine of completeness" claim on the limited record before it. The prosecution sought to admit into evidence portions of recorded telephone calls between petitioner and his mother for the purpose of proving premeditation and deliberation. Original Petition at pp. 44-46; Trial Trans. III at pp. 74-89, 173-85. The record reflects that petitioner's counsel objected to the admission of excerpts from the telephone

conversations, each of which were about 20 minutes long.  Trial Trans. III at pp. 78-79.  The judge listened to the recordings outside of the jury's presence and ultimately allowed the excerpts to be played for the jury.  *Id.* at pp. 81-91, 173-87.

The record reflects that petitioner's counsel opposed the prosecution's proposal to play excerpts from the recorded telephone conversations, rather than submit the entire conversations to the jury.  After listening to the conversations, the trial court ruled against petitioner.  While petitioner contends that his counsel failed to raise a "doctrine of completeness" argument to bar the admission of the telephone conversations, this contention does not demonstrate that counsel was deficient or acted unreasonably.  "Counsel's actions are not deficient just because, through the fabled twenty-twenty vision of hindsight, a better course of action becomes apparent."  *Murtishaw v. Woodford*, 255 F.3d 926, 946 (9th Cir. 2001) (internal quotation marks omitted).  Accordingly, there is no basis for petitioner's claim that his counsel was ineffective for failing to advance certain arguments with respect to the admission of the telephone conversations.

### 2.    Issue V (Prosecutorial misconduct)

In Issue V petitioner set forth five errors by the prosecution which allegedly violated his rights under the Fifth and Fourteenth Amendments.

### a.    Petitioner's pre-existing shoulder injury

Petitioner contends that the prosecutor failed to disclose that his shoulder injury was a pre-existing condition and that he had been recommended for correctional surgery and physical therapy.  Original Petition at pp. 47-48.  It appears that petitioner is raising another *Brady* claim regarding an alleged failure to produce exculpatory evidence.  Petitioner, however, has failed to explain why the prosecutor had a duty to disclose petitioner's own medical records. Petitioner was well aware of his medical condition and testified regarding his pre-existing shoulder injury and his limitations due to that injury.  There is no constitutional violation here.

21

### b.       The prosecutor made improper statements

Before habeas corpus relief becomes available for prosecutorial misconduct, such misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). Here, petitioner contends that the prosecutor engaged in prosecutorial misconduct by making a number of improper statements. "We analyze claims of prosecutorial misconduct based on improper statements under a two-part test: we ask first whether the remarks were improper, and then whether they were flagrant and warrant reversal." *United States v. Gabrion*, 648 F.3d 307, 349 (6th Cir. 2011), citing *United States v. Carroll*, 26 F.3d 1380, 1387–88 (6th Cir.1994).

In applying the first part of the test, the court considers the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Id.* However, prosecutors cannot offer their opinions as to credibility of a witness or the guilt of a defendant, or discuss any purported facts not introduced into evidence. *Id.*

Even if the court finds the prosecutor's conduct was improper, the court can provide federal habeas corpus relief only if the statements meet the second part of the test, i.e., the statements were so flagrant and egregious as to deny the petitioner a fundamentally fair trial. *Donnelly*, 416 U.S. at 643-45; *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). At this point, "[t]he relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*,

455 U.S. 209, 219 (1982)).   The court should consider four factors in determining whether a prosecutor's improper remarks are so flagrant as to rise to the level of a due process violation: (1) the likelihood that the prosecutor's remarks tended to mislead the jury or to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately placed before the jury; and (4) the total strength of the evidence against the accused. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

### i.       The prosecutor made "belittling" comments about petitioner's injury

Petitioner contends that the prosecutor made "belittling" comments about his injury. Petitioner, however, has not identified the comments that form the basis of this claim.   Accordingly, this claim should be denied.

### ii.      The prosecutor's conduct regarding petitioner's post-*Miranda* silence

Petitioner contends that the prosecutor made improper comments to the jury on his post-*Miranda* silence.   Original Petition at pp. 50-52.   The citations provided by petitioner do not support his claim that any such statements were made.   Trial Trans. III at pp. 230-31; Trial Trans. IV at pp. 84-86.   Moreover, after raising this issue, petitioner admits that the "prosecution never said it outright."   Original Petition at p. 52. Petitioner has presented no basis for relief for prosecutorial misconduct on this ground.   This claim should be denied.

### iii.     The prosecutor's use of a Biblical reference

Petitioner also claims that the prosecutor engaged in misconduct during closing argument by referring to him as a "liar" and comparing him to the disciple Peter denying Jesus at Easter time.   Trial Trans. IV at pp. 75-77, 84-86. These comments do not rise to the level of prosecutorial misconduct.   "In general, the government's comments during closing arguments are reviewed deferentially on habeas review."   *Robinson v. Davis*, 412 Fed. Appx. 837, 844 (6th Cir. 2011) (internal quotation marks and citation omitted).   The prosecutor's use of words like "ridiculous," "pathetic," "angry," and "liar" are not improper *per se*.   *Id.*   In addition, "[t]he prosecution may imply that a defendant is lying during its closing argument so long as the

23

prosecutor emphasizes discrepancies between the defendant's testimony and the record." *United States v. Stover*, 474 F.3d 904, 916 (6th Cir. 2007). Petitioner, in this case, did lie. The prosecutor pointed to discrepancies between petitioner's testimony and other parts of the record (e.g., statements made in a letter to Ms. Nunnery and statements made during interrogation). Trial Trans. IV at pp. 75-77, 84-86. In this regard, petitioner admitted that he lied to the authorities on at least three occasions in an attempt to avoid responsibility for the victim's beating. Trial Trans. IV at pp. 9-10. Specifically, that he lied to Trooper Berry about the victim's whereabouts (i.e., that he believed the victim was in jail); that he lied to Trooper Berry about meeting the victim (i.e., he had not been at the access site with the victim); and that he lied to Trooper Berry about being in White Pigeon that evening to meet with Ms. Nunnery. *Id.*

By his own admission, petitioner lied to the authorities to avoid responsibility for the victim's injuries. The prosecutor linked petitioner's lies to the well-known story of St. Peter, in an attempt to illustrate that people are motivated to tell lies "[t]o avoid very serious trouble." *Id.* at pp. 85-86. By referring to petitioner's admitted lies, the prosecutors did nothing more than argue the record and highlight any inconsistencies in the defense. *Cristini*, 526 F.3d at 901. Frankly, by likening petitioner's behavior to that of a Saint, it arguably cast petitioner in a better light than he deserved. Regardless, the court concludes that the prosecutor's statements were not improper.

### iv. The prosecutor mis-stated the legal elements of self-defense

Petitioner contends that the prosecution engaged in misconduct by repeatedly referring to the wrong rule regarding self defense, i.e., "using actual injuries received instead of threat perceived as the test for provocation and self-defense." Original Petition at p. 48. For example, the prosecution made the following statement with respect to the relevance of the severity of the victim's injury:

> Your Honor, the -- this offense, this murder has a  -- was a terrible murder. If the defense, I am told is self-defense, that's what he -- the defendant brought up to Officer Berry at the interview, which it's self-defense, the severity of the injury as related to the deceased is related to the perceived danger to the assailant, and the jury has to decide whether the injury inflicted by this defendant is reasonable in light

24

of the risk of injury to the defendant, and this photograph [of the victim] demonstrates that it's not.

Trial Trans. II at p. 246.  Over petitioner's counsel's objection, the court found that self-defense involved the relativity of force involved and ruled that a photograph of the victim, though gruesome, was relevant to that consideration.  *Id.* at pp. 246-48.

To the extent that the prosecution's statements made throughout trial differed from the jury instruction for self-defense, the court cured any jury confusion by advising them that the lawyers' arguments are not evidence:

> [T]he lawyers' statements and arguments are also not evidence.  They are only intended to help you understand the evidence and each side's legal theories. . .  You should only accept things that lawyers say if they are supported by the evidence or by your common sense and general knowledge.

Trial Trans. IV at pp. 89-90.  After giving this disclaimer the judge instructed the jury on the elements constituting the crimes of first degree murder, second degree murder and voluntary manslaughter, as well as the elements which petitioner needed to show to establish self-defense.  *Id.* at 99-104.  Under these circumstances, the prosecution's statements did not mislead the jury with respect to the elements of self-defense.

### 3.  Issue VI (Government interference in his defense)

In Issue VI, petitioner set forth three errors by the government which allegedly violated his rights under the Fifth and Fourteenth Amendments.  First, the state failed to preserve the prosecution witness' clothing and effects that had the same blood splatter patterns on them and more quantity of blood that petitioner's clothing.  Second, the state failed to collect, catalog, or record the mass quantity of tools at the scene, which would have negated the prosecutions's "Lone Jack Handle" theory.  Third, the state failed to preserve or produce the knife found in petitioner's pocket, "thereby showing he used the least lethal means at hand to defend himself."  Amend. Pet at pp. 11b-11c.  Petitioner contends that the government's failure to preserve favorable crime scene evidence interfered with his ability to present a full and fair defense.  Petitioner relies on *Trombetta*, 467 U.S. 479, which provides in pertinent part:

> Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. To safeguard that right, the Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3447, 73 L.Ed.2d 1193 (1982). Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system.

*Trombetta*, 467 U.S. at 485. However, the Supreme Court is unwilling to read the "fundamental fairness" requirement of the Due Process Clause "as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

*Id.*

Petitioner argues that the police failed to keep Ms. Nunnery's pants and test them for blood stains and failed to test the fingerprints on a club which may have had the victim's blood on it. Original Petition at p. 56. Petitioner believes that this evidence could have exonerated him. As evidence of bad faith, petitioner points out that the police failed to collect and catalog all of the tools at the scene. *Id.* at p. 57. In addition, petitioner contends that if the police had collected the tools, then this evidence may have supported petitioner's claim that he met Ms. Nunnery to retrieve his tools from her. *Id.* Petitioner also contends that the police officers' testimony indicated that they exhibited "blatant negligence in keeping anything potentially useful to the defense while so meticulously keeping evidence for the prosecution, combined with the obvious importance of the overlooked evidence" is "a severe showing of bad faith." *Id.* at p. 58. Petitioner's claims are without merit. Even if the police were negligent in processing the crime scene, as plaintiff asserts,

such negligence does not rise to a level sufficient to constitute bad faith and to deny petitioner due process of law. *See, e.g., Youngblood*, 488 U.S. at 58-59 (where the police did nothing more than treat the evidence in a negligent manner, such acts do not amount to bad faith).

Finally, petitioner states that when he was later arrested at a motel, the police found a knife in his pants. *Id.* at p. 59. Petitioner claims that had this knife been kept, "it would have raised considerable doubt as to Petitioner's intent by showing that he had a much more lethal weapon at his disposal and did not use it." *Id.* As an initial matter, petitioner's claim regarding the knife is not supported by the record. While petitioner relies on the testimony of Michigan State Trooper Slater, the cited testimony does not refer to petitioner possessing a knife at the motel or at the scene of the crime. Rather, the cited testimony merely describes Trooper Slater's participation in executing a search warrant at the motel where petitioner was found the day after the crime. Trial Trans. II at pp. 80, 94-95. Assuming that petitioner had a knife when he was found at the motel after the crime, there is no evidence to suggest that he had the knife when the crime was committed.

Accordingly, petitioner's claim that the government violated his constitutional rights by interfering with his defense should be denied.

### 4.       Issue VII (Denial of counsel at a critical stage of the proceedings)

In Issue VII, petitioner alleged that he was denied his rights under the Fifth, Sixth and Fourteenth Amendments because he was denied an attorney at a "critical stage" of the proceedings. Specifically, petitioner contends that his constitutional rights were violated when the judge and the prosecutor, Mr. Fisher, exchanged a few words, apparently without knowledge that petitioner's counsel had stepped outside of the courtroom. The incident occurred during trial while jury was excused:

> MR. FISHER:          Move to admit Exhibit 40, the autopsy report.
>
> MR. COLBECK:       No objection.
>
> THE COURT:         All right.  Received.
>
> (Mr. Colbeck exits the courtroom.)

MR. FISHER:          We found that we could find the recordings and expand them to suit Mr. Colbeck more appropriately on one computer.

THE COURT:           I was wondering when you might discover that.

MR. FISHER:          So what that means is that we don't have -- I guess what we can do is -- yes, we'll have a record.  We'll turn in the disk and just give the start and stop number.

                     Is that all right, Mr. Colbeck?

THE DEFENDANT:  You just told him we were having a break.

MR. FISHER:          He expanded them a little bit, but I don't have a problem with that, each one.

(Mr. Colbeck re-enters the courtroom.)

Trial Trans. III at pp. 173-74.  When Mr. Colbeck re-entered the courtroom, the court commenced a discussion with Mr. Colbeck and Mr. Fisher regarding the redaction of portions of petitioner's telephone conversations with his mother.  *Id.* at pp. 174-81.

        "[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, -- U.S. --, 129 S.Ct. 2079, 2085 (2009).  "It is settled that a complete absence of counsel at a critical stage of a criminal proceeding is a *per se* Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error." *Van v. Jones*, 475 F.3d 292, 312 (6th Cir. 2007).  A common feature of situations which courts consider to be "critical stages" of proceedings include "those in which an opportunity may be irretrievably lost, or material may come out that may be incurably damaging." *Id.* at 314-15.  Here, the few words spoken between the Judge and Mr. Fisher during Mr. Colbeck's brief absence from the courtroom did not create incurable damage to the proceedings.  The jury had been dismissed and nothing substantive occurred between the Judge and Mr. Fisher.  In fact, it appears that Mr. Fisher thought that Mr. Colbeck was still in the courtroom.  Once Mr. Colbeck returned, the Judge commenced discussion of the evidentiary matters at hand.  Nothing of substance occurred during Mr. Colbeck's absence and there was no Sixth Amendment violation.

28

5. **Summary**

Petitioner contends that the procedural defaults of Issues IV, V, VI and VII should be excused, because his appellate counsel provided ineffective assistance of counsel by failing to raise these issues and related sub-issues on appeal. After a thorough review of the record, the court concludes that there is not a reasonable probability that petitioner would have prevailed on his appeal if his appellate counsel had raised these additional issues. None of these additional claims of error had merit. Appellate counsel cannot be found to be ineffective for failing to raise issues that lack merit. *See Shaneberger*, 615 F.3d at 452; *McFarland*, 356 F.3d at 699; *Greer*, 264 F.3d at 676. Accordingly, petitioner has not established that the ineffective assistance of appellate counsel caused the procedural default of Issues IV, V, VI and VII.

C. **Fundamental miscarriage of justice**

Petitioner's failure to demonstrate cause prevents federal habeas review of the claims raised in Issues IV, V, VI and VII unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner offers no such new evidence that he is

actually innocent of the crime for which he was convicted.  He has failed to meet the fundamental miscarriage of justice exception.  Accordingly, petitioner's claims raised in Issues IV, V, VI and VII are procedurally barred and not subject to habeas review.[6]

### III.     Standard of review under 28 U.S.C. § 2254

Before a petitioner may seek habeas relief in federal court, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981);  *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994);  *see* 28 U.S.C. §2254(b)(1)(A).  Petitioner has exhausted habeas Issues I, II and III.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and  demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*,  -- U.S. --, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted).  "Under the 'contrary to' clause,

---

[6] Although these claims are procedurally barred from federal habeas review, petitioner effectively received a review of the merits of each claim under the guise of ineffective assistance of appellate counsel. *See Willis*, 351 F.3d at 745("in order to determine whether cause exists for the procedural default of [the habeas petitioner's] ineffective assistance of trial counsel claim, we must, ironically, consider the merits of that claim").  Given that a prisoner can effectively circumvent the procedural default doctrine by raising an ineffective assistance of appellate counsel claim on post-judgment review, and the onerous task of reviewing such claims, the court can legitimately question whether the procedural default doctrine continues to serve a useful purpose in this aspect of federal habeas corpus jurisprudence.

a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, -- F.3d --, 2011 WL 3903439 at *5 (6th Cir. Sept. 7, 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

**IV.    Discussion**

**A.    Issue I (petitioner was denied his "counsel of choice")**

On appeal, petitioner contested the trial court's order denying his appointed counsel's motion to withdraw and the court's failure to appoint him a new attorney. After the Michigan Court of Appeals denied this claim, petitioner asserted that his appellate counsel raised the wrong issue, i.e., that petitioner was denied his "counsel of choice." In support of this claim, petitioner contends that his attorney, Mr. Colbeck, had a conflict of interest. According to petitioner, Colbeck was retained for him by Doris Blouin. Original Petition at p. 13; Trial Trans. III at pp. 187, 197. Petitioner's relationship with Doris Blouin apparently arose through the prosecution's witness, Ms.

31

Nunnery, who testified that she was the mother of petitioner's child.  Trial Trans. II at pp. 167, 172.

At trial, Nunnery described herself and petitioner as "on and off" lovers.  *Id.* at p. 172.  Petitioner

testified that Doris Blouin was Ms. Nunnery's grandmother, who later adopted Ms. Nunnery as her

daughter. Trial Trans. III at pp. 187, 197.  For her part, Doris Blouin testified that she consistently

paid petitioner's legal fees.  *Id.* at p. 197. Despite this web of close personal relationships between

petitioner, Ms. Nunnery and Doris Blouin, and the fact that Doris Blouin apparently paid for

petitioner's retained counsel, petitioner contends that he was denied the right to be represented by

the counsel of his choice.

      The Michigan Court of Appeals addressed the original issue on appeal as follows:

> We review a trial court's ruling on a motion for withdrawal for an abuse of discretion. *People v. Williams*, 386 Mich. 565, 571, 578; 194 NW2d 337 (1972).  An abuse of discretion occurs only where a court's action is so violative of fact and logic as to constitute a perversity of will or defiance of judgment.  *People v. Laws*, 218 Mich. App 447, 456; 554 NW2d 586 (1996).  When reviewing a trial court's decision to deny a defense attorney's motion to withdraw and a defendant's motion for continuance to obtain another attorney, we consider the following factors:  (1) whether the defendant is asserting a constitutional right; (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney; (3) whether the defendant was negligent in asserting his right; (4) whether the defendant is merely attempting to delay trial; and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. *People v. Akins*, 259 Mich. App 545, 557; 675 NW2d 863 (2003).  In the instant case, although defendant is asserting his constitutional right to counsel, consideration of the other factors demonstrates no abuse of discretion by the trial court.

> Defendant implicitly argues that a bona fide dispute existed here, yet the trial court concluded that defendant did not have the right to "manipulate the system" or play games by the simple expedient of disagreeing with his lawyer.  During the proceedings, defendant filed pro per motions before the court challenging its jurisdiction, even though he was represented by counsel.  These and other motions the court characterized as "nonsense" were brought by defendant in an apparent attempt to manipulate the process.  Therefore, it was not so violative of fact and logic as to constitute a perversity of will or defiance of judgment for the trial court to find that no bona fide dispute existed.

> Next, the record reflects that defendant was negligent in asserting his right and attempted to delay his trial.  Defense counsel indicated during his motion that after a jail visit with defendant, which visit occurred between jury selection and the start of trial, counsel received a disk containing defendant's telephone conversations from jail. Defendant stated on the disk that he intended to fire his defense counsel but wanted to wait "until his 180 days were in," believing that he would gain some form of relief in that regard.  Notwithstanding defendant's erroneous belief that he was entitled to some form of relief after being held 180 days, his stated desire to wait

before firing his defense counsel evidences his negligence in asserting his right and his intent to delay trial. Finally, defendant has pointed to no resulting prejudice from the trial court's denial of defense counsel's motion to withdraw, nor do we discern any.

Defendant argues, however, that there had been no previous delays in his trial. Further, he contends that the trial court's inquiry into the "disagreement" between defendant and his counsel was superficial and completely inadequate. Neither of these arguments is a factor to be considered under the guidelines outlined by this Court in *Akins*, *supra*. Notwithstanding, we find defendant's arguments to be without merit.

After defense counsel's articulation of his reasons for the motion, the trial court gave defendant an opportunity to be heard on the matter. Defendant merely stated that he agreed with defense counsel. There is no indication that the trial court needed to inquire further and defendant has failed to point to any such indications. Furthermore, defendant has failed to cite any authority for his implicit contention that there is some higher inquiry required than to give each party an opportunity to be heard on the issue. Therefore, even though there were no previous delays in his trial, after considering the factors as outlined in *Akins*, *supra*, we find that the trial court did not abuse its discretion in denying the motion.

*People v. Hoffman*, No. 255959, slip op. at pp. 1-2.

Petitioner's right to "counsel of choice" arises from the Sixth Amendment:

"In all criminal prosecutions," the Sixth Amendment says, "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. That includes the right to representation "by an otherwise qualified attorney . . . willing to represent the defendant," *United States v. Gonzalez–Lopez*, 548 U.S. 140, 144, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006), and the right to a "choice of counsel," *id.* at 142, 126 S.Ct. 2557, though the latter is limited in "important respects," *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), and must be "balanced against the court's authority to control its own docket," *United States v. Green*, 388 F.3d 918, 921 (6th Cir.2004).

*United States v. Ammons*, 419 Fed.Appx. 550, 551 (6th Cir. 2011).[7]

As a general rule, the court has broad discretion in deciding whether to grant a motion for new counsel.

The Supreme Court has held that "[t]rial judges necessarily require a great deal of latitude in scheduling trials . . . . Consequently, broad discretion must be

---

[7] The Supreme Court announced a new rule regarding the right to "counsel of choice" in the *Gonzales-Lopez* decision, issued on June 26, 2006. The rule announced in *Gonzales-Lopez* does not apply retroactively in collateral attacks of convictions. *See Rodriguez v. Chandler*, 492 F.3d 863, 866 (7th Cir. 2007); *Peters v. Bell*, No. 1:06-cv-880, 2007 WL 3348011 (W.D. Mich. Nov. 8, 2007). However, the rule does apply in this case, because the Supreme Court decided *Gonzales-Lopez* while petitioner's direct appeal was pending before the Michigan Supreme Court.

granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (citation and internal quotations marks omitted). "[W]hen the granting of the defendant's request would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *United States v. Whitfield*, 259 Fed.Appx. 830, 834 (6th Cir.2008) (citation and internal quotation marks omitted).

*United States v. Vasquez*, 560 F.3d 461, 466-67 (6th Cir. 2009). This "broad discretion" applies in decisions which involve a defendant's request for a new attorney under the "counsel of choice" rule.

*Ammons*, 419 Fed. Appx. at 552.

As an initial matter, the trial court properly exercised its broad discretion in denying counsel's motion to withdraw. Petitioner's trial commenced with the jury voir dire on April 6, 2004. *See* Trial Trans. I. When trial resumed six days later, Mr. Colbeck moved to withdraw as petitioner's counsel. Trial Trans. II at p. 3. In support of his motion to withdraw, Mr. Colbeck stated that he could not perform the tasks demanded by petitioner, explaining in part:

> I would advise this Court that last Friday [April 9, 2004], I went to the jail in preparation of the trial to speak with my client. He advised me that he had filed *pro per* motions by way of discovery; that absent a hearing on those, that there was a fraud committed upon the Court and as such, the case should be dismissed. He advised again that this Court had no jurisdiction over him. He raised several other aspects, all of which, I find untenable, but he persists in it, in advising he will find someplace within the record to place these before the Court for the Court's consideration, which I believe would be tantamount to a mistrial, and I would hate to labor for a period of two or three days to accomplish that end.

> At the time I went to the jail, I received materials that had been provided by the prosecuting attorney there. Of particular concern, I received a disk containing telephone conversations made by my client from the jail last week. In those, on two separate occasions, he specifically indicated that I was cooperating with the prosecuting attorney, that I had been paid off to -- not to proceed in my representation of him, that I was somehow working with the prosecutor and this Court to violate his rights, that I should be fired, that I would be fired, that it was his intent to fire me and hire another attorney, but that he wanted to wait until his 180 days were in, feeling that he would gain some form of relief in that regard.

Trial Trans. II at pp. 3-4. After listening to the telephone calls, which were each about 25 minutes long, Mr. Colbeck did not believe that he could in good conscience provide petitioner with the "with the representation that he believes he needs." *Id.* at p. 5. In addition, there were evidentiary questions and aspects of the trial which petitioner insisted on developing, but which Mr. Colbeck

34

would not develop due to ethical and moral considerations.  *Id.* at pp. 3-5.  When asked about this request, petitioner stated "I agree with Mr. Colbeck."  *Id.* at pp. 5-6.

Although the trial judge denied Mr. Colbeck's motion, the judge invited petitioner to hire a lawyer of his own choosing:

> Mr. Hoffman, you have the right to be represented by a lawyer.  You have the right, the absolute right, to hire your own lawyer, a lawyer of your own choosing. If you would be unable to afford counsel, you have the right to have the court appoint counsel for you at public expense.  You also have the right to hire any lawyer you choose to replace any lawyer who you have already hired; so if there is another lawyer you wish to represent you, and he's ready to stand in, that's your right.  You don't need my permission to do any of those things.  But what you do not have the right to do, you do not have the right to manipulate the system.  You don't have the right to play a game and get this case postponed by the simple medium of disagreeing with your lawyer.  It may well be that the relationship between you and your lawyer  has broken down, but if that be so, that is because you created the problem, not your lawyer.
>
> Mr. Colbeck, I appreciate the situation in which you find yourself, and I -- you have my sympathy, but if I were to grant your motion, then Mr. Hoffman would control the Court, would he not, by the simple expedient of not cooperating with his lawyer.  And that's not how the system works.  So the motion respectfully is denied.

*Id.* at pp. 6-7.  Petitioner did not hire another attorney.

In response to petitioner's claim on appeal, the government noted that petitioner's ability to retain a new attorney was not contested at the trial:

> [Petitioner's] right to hire another lawyer of his choosing is not at issue.  As the trial court noted, [petitioner] had the "absolute right" to hire another retained lawyer to substitute for Colbeck at any time.  T II, 7.  [Petitioner] never arranged to have another retained lawyer substitute for his trial counsel.

Government's Brief on appeal at p. 3 (docket no. 19).

Based on this record, the trial court's denial of the motion to withdraw did not violate petitioner's constitutional right to hire the counsel of his choice.  Petitioner's counsel moved to withdraw after the trial commenced and the jury was chosen.  The court advised petitioner that he had an absolute right to hire another attorney.  There is no evidence that petitioner had another attorney lined up to replace Mr. Colbeck. This is not a case where the court refused to allow a criminal defendant's request to have a particular attorney appear for him at the trial.  Rather, this case involves a request which would have necessitated a last minute continuance.  *See, Whitfield ,*

259 Fed.Appx. At 834. Accordingly, the trial judge's decision is entitled to extraordinary deference.

*Id.* Furthermore, to the extent that petitioner claims that the a third-party fee arrangement created a conflict of interest for Mr. Colbeck, this claim fails. Petitioner has not demonstrated that Mr. Colbeck actively represented conflicting interests at his criminal trial. There is no evidence that Mr. Colbeck represented either Ms. Nunnery or Doris Blouin at the trial. A possible or "merely hypothetical" conflict is insufficient to establish a violation of a criminal defendant's Sixth Amendment rights. *Harbison v. Bell*, 408 F.3d 823, 836 (6th Cir. 2005). "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established a claim of ineffective assistance. . . . [T]he possibility of conflict is insufficient to impugn a conviction." *Abdur'Rahman v. Bell*, 226 F.3d 696, 713 (6th Cir. 2000), *quoting Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). Petitioner has asserted only a hypothetical conflict of interests claim. This is insufficient to establish ineffective assistance of counsel. For these reasons, petitioner's Issue I should be denied.

### B. Issue II (sufficiency of the evidence)

Petitioner contends that he did not commit first degree murder because he acted in self defense. The Michigan Court of Appeals addressed this issue as follows:

> Defendant's final contention on appeal is that there was insufficient evidence presented of premeditated and deliberated murder. We disagree. When reviewing a claim of insufficiency of the evidence, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found all of the elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319; 99 S Ct 2781; 61 L.Ed.2d 560 (1979); *Wolfe, supra*, 440 Mich. 508, 515; 489 NW2d 748 (1992). First-degree murder requires a willful, deliberate, and premeditated killing. MCL 750.316. In determining premeditation and deliberation, a trier of fact may consider: (1) a previous relationship between defendant and victim; (2) defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and location of the wounds inflicted. *People v. Moorer*, 262 Mich.App 64, 77; 683 NW2d 736 (2004).

> The previous relationship of the parties, defendant's actions before and after the killing, and the circumstances of the killing all support a finding of defendant's premeditation and deliberation and, consequently, first-degree murder. First, the parties were in a contentious, "love triangle" relationship and had had previous fights. Second, before the incident, defendant arranged to meet the victim at a remote site and told their girlfriend, Terri Nunnery, who arrived with the victim, to

leave the two men alone. The jury could have properly inferred that defendant intended to stage an altercation in a remote location with no witnesses. Additionally, defendant brought alcohol with him and later admitted during a recorded phone call that it was his plan to get the victim drunk because he couldn't fight as well when he was drunk. Defendant also admitted having the jack handle "in case things got ugly" and kept the weapon accessible by keeping his trunk open. After the attack, defendant threw away Nunnery's cell phone and stopped her from assisting the victim. Defendant also sent Nunnery a copy of her police statement along with handwritten notations suggesting how she should testify. The circumstances of the killing itself also point to defendant's intent to kill the victim. Defendant repeatedly picked up the weapon after the victim took it from him and threw it, he struck the victim multiple times in the head as opposed to the body, and he continued to inflict blows after the victim had been rendered unconscious and helpless. There was sufficient evidence for the jury to find defendant had committed first-degree murder and his conviction should stand.

Finally, defendant argues that a "pyramiding" of inferences was impermissibly required here and cites *People v. Atley*, 392 Mich. 298, 315; 220 NW2d 465 (1974). The rule that inferences must be drawn from established facts and may not be built on an inference was overruled. *See People v. Hardiman*, 466 Mich. 417, 428; 646 NW2d 158 (2002).

*People v. Hoffman*, No. 255959, slip op. at pp. 3-4.

The Michigan Court of Appeals properly addressed this issue. In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Sufficient evidence supports a conviction if  "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis added). In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the factfinder's verdict. *United States v. Rayburn*, 495 F.3d 328, 337-38 (6th Cir. 2007). The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

Based on the record in this case, the court concludes that the Michigan Court of Appeals properly found that petitioner's conviction was supported by sufficient evidence. Hoffman attempts to re-try his case on federal habeas review, by setting out his version of the facts and asserting that the fact finders drew improper inferences from the evidence. The gist of petitioner's argument is that he acted in self-defense during an altercation with the victim, after the victim, a larger man, dislocated petitioner's shoulder. To the extent that petitioner asserts that his testimony contradicted that of other witnesses, such contradictions do not establish a claim of insufficient evidence on federal habeas review. On this collateral review, the facts are viewed in the light most favorable to the prosecution, not in the light most favorable to the criminal defendant. *See Jackson*, 443 U.S. at 319. The Michigan Court of Appeals found that the circumstances of the victim's death pointed to petitioner's intent to kill him under state law. The forensic pathologist, Brian Colby Hunter, M.D., determined that the victim's cause of death was "blunt force head injuries due to him being hit by someone else." Trial Trans. II at p. 142. Dr. Hunter counted the victim as being hit at least 19 times and possibly 21 times based on his review of the injury sites. *Id.* at pp. 142, 163. Of these, the doctor testified that the victim had been struck in the head at least 10 separate times, and that the five or seven most serious blows caused massive swelling in his brain. *Id.* at pp. 164, 167. Petitioner did not contradict Ms. Nunnery's testimony that he struck the victim twice (with what she referred to as a "pipe") while the victim was lying on the ground. Trial Trans. II at p. 197; Trial Trans. III at p. 234. Based on the facts identified in the Michigan Court of Appeals' decision, e.g., petitioner's actions in meeting the victim in an isolated location, providing the victim with alcohol, having the jack handle available in the open trunk of his vehicle, striking the victim multiple times in the head with the jack handle, striking the victim when he was lying on the ground, and preventing Ms. Nunnery from assisting the victim, petitioner's actions met the required elements of first degree murder under Michigan law. Indeed, the evidence is more than sufficient. It could be viewed as overwhelming.

To the extent that petitioner disagrees with the court's application of state law regarding self-defense, this disagreement is not cognizable on federal habeas review. In determining whether sufficient evidence exists to support a conviction on habeas review, the standard set forth in *Jackson* "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. 307 at 324 fn. 16. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Petitioner cannot seek federal habeas relief based upon his disagreement with the state appellate court's construction of a state statute. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("[a] federal court may not issue a writ on the basis of a perceived error of state law"). The United States Supreme Court "repeatedly has held that the state courts are the ultimate expositors of state law" in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). *See also Miller v. Leapley*, 34 F.3d 582, 585 (8th Cir. 1994) ("[t]he essential elements of a state crime are defined by state law"); *Cox v. Maxwell*, 366 F.2d 765, 767 (6th Cir. 1966) ("[i]t is within the province of a state to define crimes and to fix the punishment therefor").

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

## C.    Issue III (ineffective assistance of appellate counsel)

Finally, petitioner contends that appellate counsel was ineffective for failing to raise issues I, IV, V, VI and VII. The court previously rejected this claim as to Issues IV, V, VI and VII. *See* discussion, § II.B., *supra*. As for failure to raise the "choice of counsel" claim set forth in Issue I, the undersigned has concluded that petitioner had no claim under this theory. *See* discussion, § IV.A., *supra*. Appellate counsel cannot be found to be ineffective for failing to raise an issue that

lacks merit.  *See Shaneberger*, 615 F.3d at 452;  *McFarland*, 356 F.3d at 699; *Greer*, 264 F.3d at

676.  Accordingly, petitioner is not entitled to relief on this claim.

### V.   Recommendation

For these reasons, I respectfully recommend that the habeas petition be **DENIED**.

Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  March 14, 2012                            /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with
the Clerk of the Court within fourteen (14) days after service of the report.  All objections and
responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written
objections within the specified time waives the right to appeal the District Court's order.  *Thomas
v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).